IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2003 Session

## HAZEL ANN EDDE v. GLADYS DALTON EDDE

**Appeal from the Circuit Court for Davidson County**
**No. 00D-2337      Muriel Robinson, Judge**

_____

**No. M2002-01204-COA-R3-CV - Filed June 3, 2003**

_____

After a thirty-six year marriage, Wife filed for divorce on the grounds of irreconcilable differences, inappropriate marital conduct, and adultery. The trial court granted the divorce to Wife, divided the marital property, and awarded Wife alimony *in futuro* in the amount of $425 per month. Husband appeals. Because the evidence does not preponderate against the trial court's decision, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and DON R. ASH, SP. J., joined.

Donald Arkovitz, James R. Tomkins, Nashville, Tennessee, for the appellant, Gladys Dalton Edde.

L.G. Burnett, Jr., Nashville, Tennessee, for the appellee, Hazel Ann Edde.

**OPINION**

Hazel Ann Edde ("Wife") and Gladys Dalton Edde ("Husband") were married on June 5, 1965. After thirty-six years of marriage, when Wife was 55 years old and Husband was 61, Wife filed for divorce on the grounds of irreconcilable differences, inappropriate marital conduct, and adultery. At the conclusion of the trial, the trial court held:

> Based on the testimony heard and the witnesses presented, Mrs. Edde has proved her case against Mr. Edde, and the Court finds him guilty of inappropriate marital conduct and guilty of adultery. The Court finds that Mr. Edde is not a credible witness. Therefore the Court awards a divorce to Mrs. Edde on grounds of inappropriate marital conduct and adultery, having observed the witnesses's demeanor and on the proof presented to the court.

As part of the divorce, the trial court made a distribution of the parties' property by awarding each party the personal and household items in their respective possessions and dividing the marital residence, various pension and retirement benefits, and Husband's workers' compensation settlement.

The trial court awarded to Wife the marital residence and its contents (with the exception of the items Wife agreed Husband could have), valued at $88,000, her retirement accounts in the amount of $16,000, her Christmas account in the amount of $200, one-half of Husband's pension plan, half of the Primelite Variable Annuity and $3,000 of Husband's workers' compensation judgment.[1] The trial court awarded Husband his ENCO profit sharing, his IRA valued at $600, one-half of the pension plan, half of the Primelite Variable Annuity, and the remainder of his workers' compensation judgment, $30,970.91. The parties had no debts to allocate.

The trial court then ordered Husband to pay alimony *in futuro* in the amount of $425 per month, stating:

> The Court finds Mr. Edde has the ability to work, even though he says he doesn't; by his own testimony he does. The Court finds Mr. Edde is just conveniently not working for this divorce and finds Mr. Edde does have sufficient assets to cover this alimony if he decides not to work. . . . It will be paid at the rate of $98.08 per week.

Husband was also ordered to pay Wife's attorney's fees in the amount of $6,510. Husband appeals, raising only the trial court's award of alimony *in futuro* to Wife.

## I. Spousal Support

While recognizing the discretion afforded to the trial court in making the decision to award alimony, Husband objects to the trial court's award of alimony *in futuro* to Wife because, he argues, Wife does not have the need for the alimony and, even if this court determines that Wife does have the need for the alimony, he does not have the ability to pay.

Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount and duration. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001). Appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to public policies reflected in applicable statutes. *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001); *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994). Our role is to determine whether the award reflects a proper application of the relevant legal principles and that it is not clearly unreasonable. *Bogan*, 60 S.W.3d at 733. When the trial court has set forth its factual findings in the record, we will presume the correctness of those findings so long as the evidence does

---

[1] While the workers' compensation settlement does not appear in the technical record, the transcript indicates that the parties stipulated to the amount of the judgment as $33,970.91.

not preponderate against them. Tenn. R. App. P. 13(d); *Bogan*, 60 S.W.3d at 733; *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn.2000).

Alimony or spousal support is authorized by statute, Tenn. Code Ann. § 36-5-101(a)(1), which gives courts discretion to order "suitable support and maintenance of either spouse by the other spouse . . . according to the nature of the case and the circumstances of the parties. . . ." There are no hard and fast rules for spousal support decisions; such determinations require a careful balancing of the relevant factors; and the determinations hinge on the unique facts of each case. *Robertson v. Robertson*, 76 S.W.3d 337, 338 (Tenn. 2002); *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999); *Anderton v. Anderton*, 988 S .W.2d 675, 682-83 (Tenn. Ct. App. 1998). In determining whether to award support and the nature, amount and length of such support, the court is to consider all relevant factors, including those enumerated in Tenn. Code Ann. § 36-5-101(d)(1).[2]

Among the factors to be considered by the courts in making spousal support decisions, the two considered to be the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson*, 76 S.W.3d at 342; *Bogan,* 60 S.W.3d at 730; *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001). Of these two factors, the disadvantaged spouse's need is the threshold consideration and the "single most important factor." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn.1995) (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50) (Tenn. Ct. App.1989)). However, the other spouse's ability to pay is also to be considered. *Id.*; *Koja v. Koja*, 42 S.W.3d 94 (Tenn. Ct. App. 2000).

---

[2]The factors the court must consider in setting the alimony obligation are:

(A) The relative earning capacity, obligations, needs and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
(C) The duration of the marriage;
(D) The age and mental condition of each party;
(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
(G) The separate assets of each party, both real and personal, tangible and intangible;
(H) The provisions made with regard to the marital property as defined in §§ 36-4-121;
(I) The standard of living of the parties established during the marriage;
(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1).

When there is economic disadvantage between divorcing parties, spousal support is appropriate. However, the legislature has expressed a preference for rehabilitative alimony over long-term, open-ended alimony *in futuro.* Tenn. Code Ann. § 36-5-101(d)(1); *Robertson*, 76 S.W.3d at 339-40; *Burlew*, 40 S.W.3d at 470; *Crabtree*, 16 S.W.3d at 358. When granting a divorce, a court may grant an order for the payment of spousal support on a long-term basis or until the death or remarriage of the recipient spouse if there is relative economic disadvantage between the spouses and rehabilitation is not feasible. Tenn. Code Ann. § 36-5-101(d)(1). Where, considering all the relevant factors, rehabilitation is not possible, the courts should not refrain from awarding long-term support when that support is appropriate under the statutory factors. *Robertson*, 76 S.W.3d at 341-42. The statutory preference for rehabilitative support does not entirely displace other forms of support. *Id.*; *Anderton*, 988 S.W.2d at 682. The purpose of alimony *in futuro* is to provide financial support to a spouse who cannot be rehabilitated. *Burlew*, 40 S.W.3d at 470-71.

In determining whether a disadvantaged spouse can be rehabilitated with short-term support, the court is to consider "every relevant factor." *Robertson*, 76 S.W.3d at 340. Neither the standard of living the parties enjoyed during the marriage nor the income or earning potential of the other spouse can be used as the sole or determinative factor. *Id.*; *Crabtree*, 16 S.W.3d at 359.

Husband does not directly challenge the trial court's implicit finding that rehabilitation of Wife was not feasible. In the instant case, the proof at trial showed that Wife has worked outside the home only since 1986 and is currently employed as a teacher's aide, earning approximately $16,000 per year. Wife argues that her income has peaked, with little expectation of increases beyond cost-of-living raises. She entered her current profession after the parties' children were grown and there is little likelihood, based on her age, education, and experience that she would be able to start a new career with higher earning capacity. We agree with Wife.

Husband does, however, make arguments that indicate that there is no real economic disadvantage between the parties, citing the award to Wife of over $107,000 in unencumbered assets and one half of Husband's pension that she will begin to collect when Husband reaches 65.[3] In addition, Husband points out his lack of education, having completed only the third grade, his age, and his considerable medical problems which limit his ability to work. He asserts that although he may have had an earning capacity in the past of $30,000 per year, he is now unemployed and is able to perform only occasional side jobs. His argument is summed up by his statement that Wife does not have a need for alimony and, even if she does, he simply does not have the ability to pay.

Among the statutory factors to be considered in deciding whether to award alimony are: the relative earning capacity, obligations, needs, and financial resources of each party; the relative education and training of each party; the ability and opportunity and necessity of each party to secure such education and training in order to improve such party's earning capacity to a reasonable level; and the assets of each party, whether they be separate assets or marital property awarded in the

---

[3]The amount of that benefit will be $131 per month.

divorce. Tenn. Code Ann. § 36-5-101(d)(1).  These factors embody the concepts of need and ability to pay.

Husband has a limited education, but was consistently employed as a heavy equipment mechanic until he sustained a work related injury which resulted in an impairment to his body in the amount of 10% to the body as a whole.  Husband's income ranged from $34,000 to $35,000 a year in the past.  More recently, after other health problems, Husband was employed sporadically, earning at most approximately $600 per week.

As a mechanic, Husband had worked on many kinds of engines, including truck engines, often as an independent contractor.  Husband admitted in his interrogatories that he was able to earn $30 per hour and to work about 20 hours per week.  At trial, however, he testified that he had not been able to regularly find that much work per week and, more recently, had been unable to find any work he was capable of performing.  In contradiction, there was testimony from witnesses who saw Husband working on vehicles a few months before trial.

Wife's income and expense statement indicates net take home monthly income in the amount of $1,043.  Wife lists her expenses as health insurance, mortgage/rent, water, electric, phone, gas, car operation, car insurance, food, clothing, medical, dental, laundry, beauty shop, and home maintenance in the amount of $1,307.  Thus, Wife claimed a monthly shortfall of $263 per month. Wife listed expenses in the amount of $105 for rent/mortgage, yet, as a result of the divorce, Wife was awarded the marital residence valued at $88,000, which is unencumbered by a mortgage. However, the instructions for the Rent/Mortgage item on the form say "including taxes and insurance."  The trial court awarded Wife more than the shortfall listed on the form.  In her brief, Wife justifies the amount of alimony awarded as making up for home and auto repairs previously made by her husband.

The evidence does not preponderate against the trial court's implicit findings that Wife is economically disadvantaged and that her rehabilitation is not feasible.  Based upon all the relevant factors, including the economic factors outlined above and the duration of the marriage, we affirm the trial court's determination that Wife is entitled to alimony *in futuro*.  In addition, the evidence does not preponderate against the trial court's explicit finding that Husband is able to generate more income than he admits and is able to pay some alimony.

With regard to Wife's need, we note that the parties were frugal during the marriage, and Wife's expense statement reflects that same frugality.  She testified that the statement reflected what was needed absent extraordinary circumstances, like something needing major repair, and gave examples of such extraordinary expenses she had recently incurred.  We find nothing unreasonable about Wife's expenses or her need for more than minimum monthly expenses in case of unexpected problems.  The trial court acted within its discretion in setting the amount of the alimony based upon the proof at trial.

We affirm the trial court's award of alimony and remand the case for any further proceedings which may be necessary consistent with this opinion. Costs of the appeal are taxed to appellant, Mr. Gladys Dalton Edde.

_____

PATRICIA J. COTTRELL, JUDGE