# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 19, 2004 Session
## ANNA MILLER v. EDUARDO MILLER

**Direct Appeal from the Chancery Court for Madison County**
**No. 59526     Joe C. Morris, Chancellor**

---

**No. W2003-00851-COA-R3-CV - Filed June 14, 2004**

---

This appeal arises from a divorce action.  We affirm in part, reverse in part, and remand.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part;**
**Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and HOLLY M. KIRBY, J., joined.

Jeff Mueller, Jackson, Tennessee, for the appellant, Eduardo Miller.

Linda Sesson Taylor, Jackson, Tennessee, for the appellee, Anna Miller.

## OPINION

Anna Miller (Ms. Miller) and Eduardo Miller (Mr. Miller) were married in October 2000, in Atlanta, Georgia.  They have one minor child, Arianna, born in February 2000.  The parties moved to Tennessee in March 2001, and separated in March 2002, at which time Ms. Miller filed for divorce.  In her complaint, Ms. Miller cites as grounds irreconcilable differences, inappropriate marital conduct, and adultery.  Mr. Miller answered and counter-complained in May 2002.

The matter was heard in the Chancery Court of Madison County in January 2003.  By order of March 7, 2003, the trial court granted Ms. Miller an absolute divorce based on ground of adultery and irreconcilable differences.  The court named Ms. Miller primary residential parent and set child support pursuant to the child support guidelines.  The court approved Ms. Miller's plans to relocate to Nashville to secure employment, and awarded Mr. Miller liberal visitation.  The court ordered Mr. Miller to maintain a life insurance policy in the amount of $300,000 naming Arianna as beneficiary, and further awarded Arianna Mr. Miller's U.S. Savings Bonds.  The court divided the parties' property, awarded Ms. Miller alimony in solido to pay for her moving expenses, and awarded Ms. Miller $7,500 as alimony in solido to pay for her attorney's fees.  Mr. Miller filed a notice of appeal to this Court on April 4, 2003.

## *Issues Presented*

Mr. Miller raises the following issues, as we restate them, for review by this Court:

(1) Whether the trial court erred by designating Wife as residential parent of the parties' minor child and ordering Husband to pay child support;

(2) Whether the trial court erred in its division of property;

(3) Whether the trial court erred in awarding wife alimony in solido and attorney's fees.

## *Standard of Review*

To the extent the issues on appeal involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *Sullivan v. Sullivan*, 107 S.W.3d 507, 509 (Tenn. Ct. App. 2002). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* at 510. With respect to the trial court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *Id.*

## *Child Custody and Support*

We review the trial court's determination of child custody under an abuse of discretion standard, affording the trial court great deference. *Herrera v. Herrera*, 944 S.W.2d 379, 385 (Tenn. Ct. App. 1996). This Court will not interfere with the trial court's determination absent a palpable abuse of discretion or unless the judgment is against the great weight of the evidence. *Id.* at 386. This deferential review is premised on the assumption that the trial court first considered the best interests of the child in making the custody determination and did not act arbitrarily. *Id.*

The welfare and needs of the child are the paramount concerns in the determination of child custody. *Id.* The true test for the award of custody is to arrive at the point of deciding with whom to place the child in preparation for a caring and productive adult life. *Id.* In making a custody determination, the trial court must engage in a comparative fitness analysis of the parents. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). In so doing, it must consider the factors outlined by the legislature as codified at Tenn. Code Ann. § 36-6-106.[1] *Id.* Custody determinations

---

[1] The statute provides that the trial court must consider:

(1) The love, affection and emotional ties existing between the parents and child;
(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; ...

(continued...)

are thus based on a combination of subtle factors, and require a factually based inquiry. *Id.* The trial court is in the best position to weigh the facts presented to it, and to assess the credibility of the parties. *Id.* at 631.

Having reviewed the record, we affirm the trial court's decision to designate Ms. Miller residential parent. Although the parties alternated child care during the pendency of the divorce, it is not disputed that Ms. Miller stopped working before Arianna's birth and was her primary care-giver. Although Mr. Miller's sister, a pediatrician, testified that she would agree to relocate to Tennessee to assist him in caring for Arianna should he be awarded residential custody, she further testified that she intended to work and was confident she could find employment here. Thus, Arianna would be in daycare regardless of whether she lives primarily with Mr. Miller or Ms. Miller. Further, Mr. Miller's sister testified that she currently lives with her father, has not lived independently since her medical residency 12 years ago, and that she has never had children. We find no abuse of discretion in the trial court's determination to name Ms. Miller residential parent, and accordingly affirm on this issue. Mr. Miller does not assert that the trial court erred in its determination of the amount of child support pursuant to the guidelines, thus we affirm the child support award.

### Classification of Property

Mr. Miller raises several points of error regarding the trial court's classification and distribution of the parties' property. Before dividing marital property, the court must first classify the parties' property as separate or marital. *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988); Tenn. Code Ann. § 36-4-121(a)(2001). Separate property remains the property of the spouse who owns it, while the court must divide marital property equitably. *Sullivan v. Sullivan*, 107 S.W.3d 507, 511 (Tenn. Ct. App. 2002). An equitable division of property must reflect consideration of the factors enumerated in the Tennessee Code, including the value of the separate property held by each spouse. Tenn. Code Ann. § 36-4-121(c)(6)(2001). Fault is expressly not to

---

[1](...continued)
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
> (6) The home, school and community record of the child;
> (7) The reasonable preference of the child if twelve (12) years of age or older. . . .
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . .
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106 (2001).

be regarded in the division of property. Tenn.Code Ann. § 36-4-121(a)(1)(2001). Trial courts are vested with a great deal of discretion when classifying and dividing the marital estate, and their decisions are entitled to great weight on appeal. *Sullivan*, 107 S.W.3d at 512. Accordingly, unless the court's decision is contrary to the preponderance of the evidence or is based on an error of law, we will not interfere with the decision on appeal. *Id.*

We first address the classification issues raised in this appeal. Mr. Miller submits the trial court erred in awarding Ms. Miller one-half of the value of his 401(k) account with General Electric ("GE") since 1999 and one-half of the equity in the marital home. He further asserts it was error for the court to award his U.S. Savings Bonds to the parties' minor child.

We agree with Mr. Miller that savings bonds acquired prior to the parties' marriage are his separate property under Tennessee Code Annotated § 36-4-121(b)(2)(A). Further, an increase in the value of separate property is marital property only where the spouse has contributed substantially to its preservation and appreciation. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 746 (Tenn. 2002). There must be some link between the contribution of the spouse and the increase in the value of the asset in order for the appreciation to be marital property. *Id.* We accordingly reverse the award to the parties' child of the savings bonds purchased by Mr. Miller prior to the parties' marriage and held solely in his name.

Mr. Miller further argues that the trial court erred by awarding Ms. Miller a one-half interest ($27,500) in the equity of the parties' marital home where the $53,000 down-payment for the home was derived from the sale of Mr. Miller's separately owned home in Atlanta and there had been a $7,000 increase in equity since the initial purchase. Mr. Miller contends that in light of the short duration of this marriage, he should be returned to the same economic position he held prior to the marriage. He further contends that he should be required to pay Ms. Miller only one-half of the increase in the equity gained during the marriage. Mr. Miller's argument in his brief and at oral argument, as we understand it, is that the marital home was purchased with separate funds and that the amount of the down-payment should, therefore, be classified as separate property. We disagree.

Separate property can become part of the marital estate due to the parties' treatment of the that property. The doctrines of transmutation and commingling provide an avenue where separate property can become marital property. *Batson,* 769 S.W.2d at 858. Transmutation

> occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of

circumstances or communications clearly indicating an intent that the property remain separate.

*Id.* (quoting 2 H. Clark, *The Law of Domestic Relations in the United States* § 16.2, at 185 (1987)). We affirm the trial court's determination that the marital home was marital property.

We next turn to Mr. Miller's 401(k) account which he established while employed by GE and which was valued at approximately $107,000. Mr. Miller worked for GE prior to the marriage and for approximately thee and one-half months after the parties were married. Thus, the 401(k) was funded in part, albeit small part, with marital funds.

Separate property also can become marital property through the doctrine of commingling. Commingling occurs when the separate property is "inextricably mingled with marital property[.]" *Langschmidt,* 81 S.W.3d at 747. However, where the separate property "continues to be segregated or can be traced into its product, commingling does not occur[.]" *Id.* In a retirement account such as Mr. Miller's 401(k) account, if separate funds and the gains associated with them can be segregated from contributions made with marital funds and gains, that property is not inextricably commingled and does not become marital property. *See Smith v. Smith*, 93 S.W.3d 871, 879 (Tenn. Ct. App. 2002).

In this case, Mr. Miller's 401(k) with GE was funded primarily with pre-marital property. Contributions to the account made after the marriage, and any gains associated with them, are marital property and must be equitably divided. However, if Mr. Miller can segregate pre-marital contributions and gains, then those amounts remain his separate property. We remand this issue to the trial court to determine whether funds in the 401(k) are inextricably commingled and for classification of the property in accordance with its finding. If the property is inextricably commingled, then it is marital property and subject to equitable division. If it is not commingled, then only the contributions made with marital funds and their associated gains are to be considered in determining an equitable distribution of property.

### *Distribution of Marital Property*

Mr. Miller additionally asserts the trial court erred in its division of the parties' debts and personal property. He contends that the division of personal property was contrary to the parties' agreement and that trial exhibit six accurately represented their desired personal property agreement.

As an initial matter, we note that trial exhibit six is not in the record before us. Thus we cannot determine what agreement, if any, the parties reached with respect to the division of marital personal property. We additionally note that Mr. Miller has failed to comply with Rule 7 of the Rules of Courts of Appeal of Tennessee, which provides:

(a) In domestic relations appeals where the issues involve the amount or the disposition of the marital property, the appellant's brief shall contain in the statement

of facts or in an appendix, an orderly tabulation of all marital property in a form substantially like the form attached hereto. All entries in the table as to value and to whom the property was awarded shall be accompanied by a citation to the record where the information may be found.

(b) If the appeal involves issues about the separate property of either party or the allocation of the marital debts, the appellant's brief shall contain a separate table in the same form showing the pertinent information for that disputed issue.

The trial court awarded Ms. Miller furniture purchased while the divorce action was pending and several specified items of personal property which she enumerated in her prayer for relief. Mr. Miller was awarded all remaining personal property. There is nothing in the record to indicate the value of this property. The trial court assigned the parties' joint debt to Mr. Miller and determined Ms. Miller would be obligated for her educational debt. There is nothing in this record on which to base a conclusion that the evidence preponderates against the trial court's findings.

However, when making an equitable division of marital property, the trial court must take into account the value of the parties' separate property. In light of our determination regarding the trial court's classification and division of Mr. Miller's 401(k) with GE, we must remand for reconsideration of whether the division of property is equitable.

### *Alimony*

Mr. Miller asserts the trial court erred in awarding Ms. Miller $6,000 as alimony in solido to pay for moving expenses. The appropriateness of an award of alimony is dependent on the facts and circumstances of each case. *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). The primary consideration is the need of the recipient spouse, followed by the obligor's ability to pay. *Id.* In making its determination of an alimony award, the court must balance several statutory factors including those enumerated in section 36-5-101(d)(1) of the Tennessee Code. *Id.* The trial court has broad discretion in determining the type, amount, and duration of alimony based upon the particular facts of each case. *Id.* at 511. This Court reviews an award of alimony under an abuse of discretion standard. *Id.*

An award of attorney's fees constitutes alimony in solido. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000). An award of attorney's fees "is conditioned upon a lack of resources to prosecute or defend a suit in good faith. . . . If a spouse does not have separate property of her own which is adequate to defray the expenses of the suit, certainly she should not be denied access to the courts because she unable to procure counsel." *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 751 (Tenn. 2002) (quoting *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983)). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. *Id.* The determination of whether an award of attorney's fees is appropriate in a divorce action is within the wide discretion of the trial court, and we will not disturb this determination absent clear evidence of an abuse of discretion. *Id.*

In this case, the parties do not dispute that Ms. Miller left her employment to care for the parties' child or that Mr. Miller was the parties' sole income-earner, earning a salary in excess of $95,000 plus an annual bonus and retirement benefits. The parties also do not dispute that they relocated to Tennessee to further Mr. Miller's career, or that Ms. Miller is relocating from Jackson to Nashville in order to maximize her employment opportunities. However, in light of our holding regarding the classification and distribution of the parties' property, we must remand the issues of alimony and attorney's fees to the trial court to determine whether an award is appropriate.

### *Conclusion*

We affirm the determination of the trial court that Ms. Miller shall be the residential parent of the parties' minor child and the award of child support based on the child support guidelines. We also affirm classification of the marital home as marital property. We reverse the award of Mr. Miller's savings bonds to the parties' minor child. We remand this cause to the trial court for (1) a finding of whether Mr. Miller's 401(k) account is marital property by virtue of the doctrine of commingling; (2) an equitable division of marital property; (3) determination of the appropriateness of an award of alimony in solido; (4) determination of the appropriateness of an award of attorney's fees. Costs of this appeal are taxed one-half to Anna Miller and one-half to Eduardo Miller, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE